IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-

BARRY A. COLE, as
Personal Representative of the ESTATE OF
MICHELE ANDREA KUBAS, Deceased;
KIRSTEN MICHELE KUBAS;
ROBERT JOSEPH KUBAS II; and
KEVIN JAMES KUBAS

Plaintiff,

vs.

MEDTRONIC MINIMED, INC.,
MINIMED DISTRIBUTION CORP.,
MEDTRONIC, INC., MEDTRONIC USA, INC.,
& JOHN DOE DEFENDANTS 1-5

Defendants.

---

## COMPLAINT AND JURY TRIAL DEMANDED

---

COMES NOW the Plaintiffs, Barry A. Cole as personal representative of the Estate of Michele Andrea Kubas, and the surviving children of Michele Andrea Kubas, Kirsten Michele Kubas, Robert Joseph Kubas II, and Kevin James Kubas (collectively Plaintiffs), by and through their attorneys, Nemkov │Brunger │Bonifazi │McLeod, PLLC, and hereby files this Complaint and Jury Demand against the Defendants, Medtronic Minimed, Inc., Minimed Distribution Corp., Medtronic, Inc., Medtronic USA, Inc., (hereinafter collectively referred to as "Defendants" or "Medtronic") and John Doe Defendants 1-5, and allege as follows:

## **INTRODUCTION**

1.     This action arises from the wrongful death of Michele Andrea Kubas caused by use of the Medtronic MiniMed Infusion Set.  Plaintiffs bring this action as the Personal

Representative of the Estate of Michele Andrea Kubas (the "Decedent") and the children of Michele Andrea Kubas (together "Plaintiffs"), against the captioned Defendants, jointly and severally, on the grounds and in the amount as hereinafter set forth.

2.     This action is brought by Plaintiffs, and on behalf of Decedent who can no longer speak for herself, but who used Medtronic MiniMed Infusion Sets for the purpose of delivering insulin in measured amounts to control her diabetes, which prior to her untimely death was well controlled.   Plaintiffs suffered damages as a result of Defendants' wrongful conduct in connection with the development, design, testing, manufacture, distribution, and sale of Medtronic MiniMed Infusion Sets.   Plaintiffs suffered damages as a direct result of Michele Andrea Kubas's use of Medtronic MiniMed Infusion Sets, which caused her untimely and avoidable death.

## PARTIES

3.     Plaintiff, Barry A. Cole, is the surviving sibling and personal representative of the Estate of Michele Andrea Kubas, deceased, and is a resident of Adams County, Colorado.

4.     At the time of her use of Medtronic MiniMed Infusion Sets and subsequent death, Michele Andrea Kubas resided with her brother, Barry A. Cole, in Adams County, Colorado.

5.     Plaintiffs Kirsten Michele Kubas, Robert Joseph Kubas II, and Kevin James Kubas are the surviving children of Michele Andrea Kubas.

6.     Defendant Medtronic MiniMed, Inc., is a foreign corporation organized and existing under the laws of Delaware, with its principal place of business at 18000 Devonshire Street, Northridge, California 91325.   At all times relevant this this Complaint, this Defendant conducted business in the State of Colorado, but does not maintain a registered agent for service of process in Colorado.   This Defendant may be served with process upon its registered agent,

Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833.

7.   Defendant, MiniMed Distribution Corp., is a foreign corporation organized and existing under the laws of Delaware, with its principal place of business at 18000 Devonshire Street, Northridge, California 91325.   At all times relevant this this Complaint, this Defendant conducted business in the State of Colorado.   This Defendant may be served with process via service upon its registered agent, Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

8.   Defendant Medtronic, Inc., is a foreign corporation organized and existing under the laws of Minnesota, with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.   At all times relevant this this Complaint, this Defendant conducted business in the State of Colorado.   This Defendant may be served with process via service upon its registered agent, Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

9.   Defendant Medtronic USA, Inc., is a foreign corporation organized and existing under the laws of Minnesota, with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.   At all times relevant this this Complaint, this Defendant conducted business in the State of Colorado.   This Defendant may be served with process via service upon its registered agent, Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

## JURISDICTION AND VENUE

10.   This Court has personal jurisdiction over Medtronic because Medtronic regularly and intentionally conducts business in Colorado and has sufficient minimum contacts in Colorado which is alleged to have caused the wrongful death of Decedent within the State of Colorado. Medtronic intentionally availed itself of this jurisdiction by marketing and selling products and

3

services and by accepting and processing payments for those products and services within Colorado. Defendants further availed itself of jurisdiction in Colorado by designing, manufacturing, testing, packaging, marketing, distributing, labeling and/or placing said products in the stream of commerce with the knowledge that said products would reach Colorado.

11.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and this case is between citizens of different states.

12.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and/or because Medtronic is subject to this Court's jurisdiction with respect to this action.

13.  The Decedent, Michele Andrea Kubas, was injured as a result of the defective Medtronic products at issue in this Complaint.  The product failures and the proximal resulting injury occurred while she was at her home in Adams County, Colorado, within the jurisdiction of the United States District Court for the District of Colorado.  Jurisdiction and venue are appropriate in this Court.

## **FACTUAL ALLEGATIONS**

14.  On or about August 14, 2017, Michele Kubas was a relatively healthy, 53 years old resident, of Adams County, Colorado.  She productively and happily worked as a bank teller in a local bank and was a sister to Barry Cole and mother to three (3) children:  Kirsten Michele Kubas, Robert Joseph Kubas II, and Kevin James Kubas.

15.  Michele Kubas was, however, a diabetic and she used a Medtronic MiniMed insulin pump to deliver the necessary amount of insulin into her blood stream to properly treat her diabetes. The MiniMed insulin pump stored up to one week's worth of insulin.  The insulin is delivered from

the pump to the patient's body through plastic tubes called "infusion sets".

16. Infusion sets are affixed to the patient's body via adhesive and are intended to be worn without disruption for several days.

17. Michele Kubas used the Medtronic MiniMed Sure-T Paradigm Infusion Set to deliver the insulin from the pump to her body, MT-864.

18. On or about August 12, 2017, Michele Kubas, at her home in Adams County, Colorado, changed her infusion set and loaded her insulin pump, which contains enough insulin to last up to one week.

19. That same day, in an attempt to regulate her blood glucose, she adjusted the settings on her insulin pump.

20. On or about August 13, 2017, Michele Kubas's blood glucose spiked at approximately 12 p.m. to 2 p.m. and she again adjusted the settings on her insulin pump in an attempt to regulate her blood glucose.

21. Sometime thereafter, and despite many attempts to regulate her glucose levels, Michele Kubas was alone in her home, and believed to be very disoriented and confused as her insulin levels continued unregulated.

22. Upon information and belief, on or about August 13, 2017, Michele Kubas again attempted to adjust her insulin using the settings of her insulin pump seemingly giving herself additional boluses of insulin.

23. Disoriented by her condition, and without any warning by the Defendants, Mr. Kubas was unaware that the devise Defendants provided to her to control her diabetes was materially malfunctioning without warning of any kind from the device she trusted and relied upon.

24. On or about the morning of August 14, 2017, following many unsuccessful attempts to

reach his sister, Barry Cole called the paramedics to the Cole/Kubas residence. Ms. Kubas was determined to have suffered from Diabetic Ketoacidosis ("DKA") and she was pronounced dead at 11:40 a.m. on August 14, 2017 at the age of 53 years old.

25. Sometime after changing her infusion set on the afternoon of August 12, 2017 to the morning of August 14, 2017, the Medtronic insulin pump malfunctioned due to what is an apparent defect in the infusion sets which can trigger an over or under delivery of insulin to the user. This malfunction was a direct cause of Ms. Kubas's increasingly fatal levels of blood sugar which can lead to DKA.

26. Michele Kubas ultimately died from injuries she sustained as a result of the defective Medtronic MiniMed Infusion Set at issue.

27. The Medtronic MiniMed Infusion Set at issue malfunctioned as a result of a defect that caused fluid to block the infusion set vent membrane during the priming/fill-tubing process, which prevents the infusion set from working properly and results in over or under-delivery of insulin.

28. The Medtronic MiniMed Infusion Set at issue was part of a lot of infusion sets that were subsequently recalled on September 7, 2017, due to the defective condition that killed Michele Kubas.

29. The Defendants designed, manufactured, marketed and distributed the MiniMed Sure-T Paradigm Infusion Sets, which are marketed to deliver insulin from an insulin pump to a diabetes patient in measured amounts. The MiniMed Sure-T Paradigm Infusion Sets consist of a membrane and disposable plastic tubes which transport insulin from the pump to the patient's body.

30. The Medtronic MiniMed Infusion Sets are used in conjunction with an insulin pump to help diabetics regulate their blood sugar by providing a constant source of insulin. They

provide an alternative to multiple daily injections of insulin. The pump, about the size of a deck of cards, weighs only a few ounces and can be worn on a belt or kept in a pouch under clothing. The pump connects to flexible plastic tubing that delivers insulin to the body. Users set the pump to give a steady trickle of insulin throughout the day.  It can be programmed to release larger doses at meals or at times when blood sugar is too high.

31.  Michele Kubas had no way of knowing that the MiniMed Sure-T Paradigm Infusion Sets that she was using were defective in design, manufacture, and marketing, and that, even when used in conformance with Defendants' instructions, they were prone to deliver inaccurate and life-threatening doses by becoming blocked, resulting in over or under delivery of insulin.

32.  Medtronic is a global healthcare products company, with annual revenue in the billions of dollars.  Medtronic touts its leadership in the medical device industry, specifically representing that it has 25 years of continuous leadership in diabetes device solutions that improve patients' lives.  Medtronic even has a division that touts its specialization and expertise in diabetes management.  Medtronic claims to be passionate about diabetes care, with a highly trusted brand and a proven track record for advancing solutions. This claim is echoed in part of Medtronic's mission statement in which Medtronic vows to "strive without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity, and service."

33.  In spite of Medtronic's stated mission, Medtronic MiniMed insulin pumps and infusion sets have been the subject of a myriad of problems and defects over the years.  For example, in sharp contrast to the virtuous ideals from Medtronic's Website are statements from a June 1, 2009 letter from the United States Food and Drug Administration ("FDA") to William A. Hawkins, Medtronic's president and chief executive officer regarding Medtronic PR Operations

Co., the firm where MiniMed insulin pumps are manufactured.   In criticizing Medtronic's manufacturing and reporting processes, the FDA cited Medtronic for:

> Failure to report to FDA no later than 30 calendar days after the day that you receive or otherwise become aware of information, from any source, that reasonably suggests that a device that you market: (1) may have caused or contributed to a death or serious injury; or (2) has malfunctioned and this device or a similar device that you market would be likely to cause or contribute to a death or serious injury, if the malfunction were to recur...

34.   In contravention of applicable regulations, Medtronic had failed to report an incident involving a MiniMed insulin pump in which "device failure or malfunction may have contributed to or caused the user's hospitalization and the device's malfunction would be likely to cause or contribute to a death or serious injury, if the malfunction were to occur."

35.   The FDA also found fault with the personnel that Medtronic entrusted at its manufacturing facility in Puerto Rico with determining whether a Medtronic device was dangerous. Specifically, the FDA cited Medtronic for:

> Failure to have a person who is qualified to make a medical judgment  reasonably conclude that a device did not cause or contribute to a death or serious injury, or that a malfunction would not be likely to cause or contribute to a death or serious injury if it were to recur, as required by [United States federal law]. Persons qualified to make a medical judgment include physicians, nurses, risk managers, and biomedical engineers, under [United States federal law].

36. According to FDA Investigators, this plant had a wide range of problems that included lax testing of products for defects, proper record keeping, and employing someone with insufficient training as a medical expert to determine danger or defects.  Said employee only had a high school diploma with some additional in-house training.   In listing these and other

violations, the FDA concluded that the problems may be symptomatic of serious problems in Medtronic's manufacturing procedures and its quality controls.

37.   None of the cited violations reflect Medtronic's hollow promise to strive "without reserve for the greatest possible reliability and quality in our products; to be the unsurpassed standard of comparison and to be recognized as a company of dedication, honesty, integrity and service."

38.   On or about June 7, 2013, these issues led to a Class I Recall of many of the Defendants' insulin infusion sets labeled MiniMed Paradigm Insulin Infusion Sets.  Said recall included lots manufactured between 2001 and 2013 and approximately eleven million disposable infusion sets were recalled.

39.   Unfortunately, past recalls and problems associated with Medtronic infusion sets did not result in Medtronic designing and marketing safe products for use by Michele Kubas.

40.   Shortly after the death of Ms. Kubas, and other users of Defendants' product, on September 7, 2017, Medtronic finally issued an "Urgent Medical Device Recall" regarding Medtronic MiniMed Infusion Sets.

41.   The Recall Notice states that Medtronic has become aware of recent reports of potential over or under-delivery of insulin shortly after an infusion set change.

42.   The Recall Notice states that this problem is caused by fluid blocking the infusion set membrane during the priming/fill-tubing process, which prevents the infusion set from working properly.  The result can be unreliable delivery of insulin with no notice or way to detect for potential blockage or device failure.

43. The Recall Notice also announces that Medtronic has an alternate infusion set design, which contains a "new and enhanced membrane material that significantly reduces the risk."

44. Defendants were aware or should have been aware of the defects and risks associated with their products, but proceeded with conscious indifference to the rights, safety and welfare of others. Improper delivery of insulin is a serious matter that poses catastrophic, lethal risk. In spite of this, Defendants intentionally failed or refused to provide this notice or warning to Ms. Kubas prior to her death knowing that it would cause them lost profits. In this sense, Defendants chose monetary gain over the lives of patients such as Ms. Kubas.

45. As a result of the defective MiniMed Infusion Sets, Michele Kubas was not delivered proper doses, either routine or substantive emergency boluses of insulin, which ultimately led to DKA and her death. Causes of action are hereby asserted for the wrongful death of Michele Kubas.

## FIRST CLAIM FOR RELIEF
### (C.R.S. § 13-21-201, et. seq. Wrongful Death by Negligence – All Defendants)

46. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

47. At all times relevant and material hereto, Defendants were engaged in the business of designing, manufacturing, testing, labeling, marketing, selling and distributing Medtronic MiniMed Infusion Sets to members of the public. The product at issue was defective and unreasonably dangerous at the time it left the hands of the Defendants. Defendants placed their product into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design of the product.

48. Defendants' product was unreasonably and dangerously defective beyond the extent

contemplated by ordinary users with ordinary knowledge regarding the product and regular practices.   Decedent was unaware of the danger as Defendants provided ineffective and inadequate warnings and instructions.

49.   Defendants' product was defective due to inadequate post-marketing warnings and instructions, and/or inadequate testing and studies, and/or inadequate reporting regarding the results.

50.   Defendants' product was defective in light of the dangers posed by its design and the likelihood of those avoidable and foreseeable dangers.   Defendants' product was defective because the inherent risk of harm in Defendants' product design outweighed the utility or benefits of the existing product design.   Defendants' product was defective because reasonably cost-effective and feasible state-of-the-art alternatives existed at the time that would not have undermined the product's usefulness.

51.   Defendants' were aware of effective substitutes for the product.   The gravity and likelihood of the dangers posed by the product's design outweighed the feasibility, cost, and adverse consequences to the product's function of a safer alternative design that Defendants reasonably should have adopted and implemented.

52.   There was a safer alternative design that would have prevented or significantly reduced the risk of injury.   It was reasonable as well as economically and technologically feasible at the time the product left Defendants' control by the application of existing or reasonably achievable scientific knowledge.

53.   The defective and unreasonably dangerous conditions discussed herein existed when the product left Defendants' control.   They existed when Defendants sold the product.   They existed when Decedent received it.

54.   At all relevant times, Defendants knew or reasonably should have known that their product was unreasonably dangerous and defective when used as designed and directed.

55.   Defendants held themselves out as experts and specialists and therefore possessed a higher degree of skill and learning.

56.   Defendants had a duty to exercise reasonable care, and to comply with the then existing standard of care, in the design, testing, research, development, packaging, distribution, promotion, marketing, advertising, instruction, and sale of their product. Specifically:

(a)   Defendants had a continuing duty to ensure that the product they provided was safe and used correctly through proper design, testing, research, adequate instruction, post-market surveillance, and appropriate modifications;

(b)   Defendants had a duty to anticipate the environment in which the product would be used and to design against the reasonably foreseeable risks attending the product's use in that setting, including misuse or alteration;

(c)   Defendants had a continuing duty to give an adequate warning of known or reasonably foreseeable dangers arising from the use of their product;

(d)   Defendants had a duty to provide adequate warnings and instructions, which means they had to be comprehensible to the average user, calculated to convey the material risks to the mind of a reasonably prudent person, and of an intensity commensurate with the danger involved;

(e)   Defendants had a continuing duty to assure the product they provided was properly labeled and true to the representations Defendants made about it;

(f)   Defendants had a continuing duty to make sure their product had complete and accurate information and instructions concerning its proper use;

(g)     Defendants had a continuing duty to modify their products, and their packaging, instructions, promotional and advertising efforts to eliminate confusion and user error, assure compliance, and prevent harm; and

(h)     Defendants had a continuing obligation to disseminate appropriate content and employ appropriate methods to convey accurate and complete product information.

57.   In violation of the existing standards and duties of care, Defendants, individually and collectively, deviated from reasonable and safe practices in the following ways, by:

(a)     designing a product defective in design and warnings/instructions;

(b)     failing to conduct pre and post market safety tests and studies;

(c)     failing to collect, analyze, and report available data regarding use of Defendants' product;

(d)     failing to conduct adequate post-market monitoring and surveillance;

(e)     failing to include adequate warnings about and/or instructions;

(f)     failing to provide adequate warnings and/or proper instructions regarding proper uses of the product;

(g)     failing to inform users that Defendants had not adequately tested or researched the product to determine its safety and risks;

(h)     failing to educate and instruct users about the unique characteristics of Defendants' product and the proper way to use it;

(i)     failing to implement and execute corrective and preventive actions to eliminate injuries; and

(j)     continuing to promote and market the product despite the foregoing failures.

58.  Had Defendants designed a safe product and/or undertaken the tests, studies, and steps described herein, the injuries and damages complained of here would not have occurred.

59.  By failing to provide Plaintiff with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Medtronic MiniMed Infusion Sets, and/or that there existed safer and more equally effective alternative products, Defendants breached their duty of reasonable care and safety.

60.  Defendants actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Decedent and the general public.

61.  Defendants also owed a duty to the general public, and specifically to the Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their insulin devices, including the Medtronic MiniMed Infusion Sets at issue in this lawsuit.  Defendants failed to exercise reasonable care in the design of the Medtronic MiniMed Infusion Sets because as designed, Medtronic MiniMed Infusion Sets was capable of causing serious personal injuries such as those suffered by Decedent during foreseeable use.  Defendants also failed to exercise reasonable care in the marketing of Medtronic MiniMed Infusion Sets because they failed to warn, that as designed, Medtronic MiniMed Infusion Sets was capable of causing serious personal injuries such as those suffered by Decedent during foreseeable use.

62.  Defendants breached their duty and were negligent in, but not limited to, the following actions, misrepresentations, and omissions toward Decedent:

(a)     Failing to use due care in developing, testing, designing and manufacturing Medtronic MiniMed Infusion Sets so as to avoid the aforementioned risks to individuals when Medtronic MiniMed Infusion Sets were being used for treatment;

(b)     Failing to accompany their product with proper or adequate warnings, or labeling

regarding adverse risks associated with the use of Medtronic MiniMed Infusion Sets and the comparative severity and duration of such adverse effects;

(c)     In disseminating information to Decedent that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to patients such as Decedent;

(d)     Failing to accompany their products with proper or adequate rate of incidence;

(e)     Failing to provide warnings or other information that accurately reflected the symptoms, scope, and severity of the health risks;

(f)     Failing to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Medtronic MiniMed Infusion Sets;

(g)     Failing to warn Decedent, the medical and healthcare community, and consumers that the product's risk of harm was unreasonable and that there were safer and effective alternative products available to Decedent and other consumers;

(h)     Failing to provide adequate training or information to medical care providers for appropriate use and handling of Medtronic MiniMed Infusion Sets and patients using Medtronic MiniMed Infusion Sets;

(i)     Failing to adequately test and/or warn about the use of Medtronic MiniMed Infusion Sets, including, without limitations, the possible adverse health risks caused by the use of Medtronic MiniMed Infusion Sets;

(j)     In designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable use, which Defendant knew or should have known could cause injury to Decedent;

(k)     Failing to remove Medtronic MiniMed Infusion Sets from the market when

Defendants knew or should have known of the likelihood of serious health risks and injury to its users; and

(l)     Failing to adequately warn users, consumers, and physicians about the severity, scope and likelihood of bleeds and related dangerous conditions to individuals using Medtronic MiniMed Infusion Sets.

63.   The Medtronic MiniMed Infusion Sets that injured Decedent was in substantially the same condition when Decedent used it as it was when it left the control of Defendants.  Defendants' Medtronic MiniMed Infusion Sets' ability to cause serious personal injuries and damages, such as those suffered by Decedent, was not due to any voluntary action or contributory negligence of Decedent.  Decedent used the Medtronic MiniMed Infusion Sets as directed and without change to it form or substance.

64.   Defendants' failure to exercise reasonable care in the design, marketing, warnings and/or manufacturing of Medtronic MiniMed Infusion Sets was a proximate cause of Decedent's injuries and damages, including but not limited to her untimely death.

65.   Plaintiff seek all damages to which Plaintiff may be justly entitled.

66.   The Plaintiff's injuries and damages are severe and permanent and will continue into the future and were accompanied by fraud, malice, and/or gross negligence.  As a result, the Plaintiffs intend to seek actual and punitive damages from the Defendants as allowable by law.

## SECOND CLAIM FOR RELIEF
### (C.R.S. § 13-20-101, et. seq. Survival Action - All Defendants)

67.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

68.      Defendants are each vicariously liable for the negligence of its subsidiaries, employees, technicians, staff members, agents and representatives including, managers, health

workers or any other individual employed in any capacity who participated in the care and treatment of Ms. Kubas owing her a duty of care.

69.     Defendants' conduct, as alleged in other paragraphs herein, was negligent and did not meet the acceptable standard of care in one or more particular aspects.

70.     As a direct and proximate result and consequence of Defendants' negligence, Plaintiffs have sustained and will continue to sustain in the future substantial damages, injuries, and losses, lost wages, burial expenses, etc.  The precise amount of such damages, injuries, and losses shall be proved at trial.

**THIRD CLAIM FOR RELIEF**
**(C.R.S.  6-1-101, et. seq.  Colorado Consumer Protection Act ("CCPA") – All Defendants)**

71.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

72.     Defendants' Medtronic MiniMed Infusion Sets was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and death from the use of Medtronic MiniMed Infusion Sets but failed to provide an adequate warning to patients and prescribing physicians of the product, knowing the product could cause serious injury and or death.

73.     Decedent was prescribed and used Medtronic MiniMed Infusion Sets for its intended use.

74.     Decedent count not have known about the dangers and hazards presented by Medtronic MiniMed Infusion Sets.

75.     The Decedent, individually and through her prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants.  The Defendants had a continuing duty to warn the Decedent and prescribing physicians of the dangers associated with

Medtronic MiniMed Infusion Sets. Had Decedent received adequate warnings regarding the risks associated with Medtronic MiniMed Infusion Sets, she would not have used Medtronic MiniMed Infusion Sets.

76. Decedent purchased and used Medtronic MiniMed Infusion Sets for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws, including the CCPA.

77. Unfair methods of competition or deceptive acts of practices that were proscribed by law, including the following:

(a) Representing that goods or services have characteristics, ingredients, uses benefits or quantities that they do not have;

(b) Advertising goods or services with the intent not to sell them as advertised; and

(c) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

78. Defendants violated consumer protection laws, including the CCPA, through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Medtronic MiniMed Infusion Sets.

79. Defendants uniformly communicated the purported benefits of Medtronic MiniMed Infusion Sets while failing to disclose the serious and dangerous side-effects related to the use of Medtronic MiniMed Infusion Sets and of the true state of Medtronic MiniMed Infusion Sets regulator status, its safety, its efficacy, and its usefulness. Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Decedent in the marketing and advertising campaign described herein.

80.   Defendants conduct in connection with Medtronic MiniMed Infusion Sets was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendant misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Medtronic MiniMed Infusion Sets.

81.   As a result of these violations of consumer protection laws, Plaintiffs have incurred and/or will incur, serious physical injury, pain, suffering, death, loss of income, loss of opportunity and loss of family and social relationships, for which Defendants are liable.

## FOURTH CLAIM FOR RELIEF
### (Breach of Express Warranty – All Defendants)

82.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

83.   Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce Medtronic MiniMed Infusion Sets, in the course of the same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Decedent, or persons responsible for consumer.

84.   Medtronic MiniMed Infusion Sets materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Medtronic MiniMed Infusion Sets, respectively manufactured and/or distributed and sold by Defendants, and which Decedent purchased and used in direct or indirect reliance upon these express representations.  Such failure by Defendants constituted a material breach of express warranties made, directly or indirectly, to Decedent concerning Medtronic MiniMed Infusion Sets sold to Decedent.

85.   The Defendants represented and warranted to the Decedent that its Medtronic MiniMed Infusion Sets were safe for use in accordance with the Defendants' protocols.   Said representations were in the form of marketing materials, device information and product materials provided to the Decedent.   The Decedent justifiably relied on Defendants' representations and express warranties in electing to use said product.

86.   The Medtronic MiniMed Infusion Sets at issue did not conform to Defendants express representations and warranties.

87.   At all times relevant, said product did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

88.   At all times relevant, said product did not perform in accordance with the Defendants' representations.

89.   Defendants' product was not fit for the ordinary purpose for which such goods were used.   It was unmerchantable when used as directed and defective in design, and the Defendants' failure to provide adequate warnings and instructions also resulted in said product being unreasonably dangerous.   Defendants' product was dangerous to an extent beyond the expectations of ordinary consumers with common knowledge of the product's characteristics, including Decedent.

90.   Defendants are bound for the care of their agents, servants, employees, officers, and directors and for the neglect and/or fraud of the same.   Defendants are liable for the conduct of their agents, servants, employees, officers, and directors committed in the course of their activities on behalf of and in furtherance of the company.   Defendants are liable for their agents, employees, officers, and directors conduct attempting to advance Defendants' business. Defendants expressly and impliedly authorized and ratified the conduct of their agents, servants,

employees, officers, and directors.  Defendants received significant benefits as a direct result of their agents', employees', servants', officers', and directors' conduct.

91.  As a direct, foreseeable, and proximate result of Defendants' breaches of express warranties, Decedent suffered grievous bodily injury and consequent economic and other loss, as described above, when Decedent's physician, in reasonable reliance upon such express warranties, prescribed for Decedent the use of Medtronic MiniMed Infusion Sets.  Decedent purchased and used as prescribed and instructed by her physician, leading to Decedent's injuries.

92.  The Decedent's injuries and damages are severe and permanent, will continue into the future, and were accompanies by circumstances of fraud, malice, and/or gross negligence. As a result, the Plaintiff seek actual and punitive damages from Defendants.

## FIFTH CLAIM FOR RELIEF:
### (Breach of Implied Warranty – All Defendants)

93.  Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

94.  Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce Medtronic MiniMed Infusion Sets, in the course of the same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Decedent, or persons responsible for consumer.

95.  Defendants impliedly warranted their Medtronic MiniMed Infusion Sets, which they manufactured and/or distributed and sold, and which Decedent purchased and used, to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

96. Defendants breached their implied warranties of the Medtronic MiniMed Infusion Sets product sold to Decedent because this product was not fit for its common, ordinary, and intended use.

97. As a direct, foreseeable and proximate result of Defendants' breaches of implied warranties, Decedent suffered grievous bodily injury and consequential economic and other losses, as described above, when Decedent used Medtronic MiniMed Infusion Sets, in reasonable reliance upon the implied warranties, leading to the Plaintiff' injuries.

98. Decedent's injuries and damages are severe and permanent, will continue into the future, and were accompanies by circumstances of fraud, mailice, and/or gross negligence. As a result, the Plaintiff seek actual and punitive damages from the Defendants.

### SIXTH CLAIM FOR RELIEF:
### (Fraudulent Concealment– All Defendants)

99. Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

100. Defendants, having undertaken the manufacturing, marketing, distribution and promotion of Medtronic MiniMed Infusion Sets described herein, owed a duty to provide accurate and complete information regarding these products.

101. The Defendants knew or should have known, that Medtronic MiniMed Infusion Sets was unreasonably dangerous and defective, and caused serious, at time fatal complications.

102. Despite their knowledge, the Defendants omitted material facts in the disclosures they made to the public, the medial community and to consumers, including the Decedent and prescribing physicians, concerning the use and safety of Medtronic MiniMed Infusion Sets.

103. The Defendants made untrue, deceptive, and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including the Decedent and prescribing physicians, concerning the use and safety of Medtronic MiniMed Infusion Sets.

104. The Defendants' practices relating to their promotion of Medtronic MiniMed Infusion Sets created and/or reinforced a false impression as to its safety.

105. The Defendants' practices of promoting Medtronic MiniMed Infusion Sets placed and continues to place all consumers of Medtronic MiniMed Infusion Sets at risk for serious injury resulting from its potentially lethal health risks.

106. The Defendants' statements and omissions were made with the intent that the Decedent and Decedent's physician would rely on them.

107. The Decedent purchased and used Medtronic MiniMed Infusion Sets for personal, family or household purposes and suffered ascertainable losses of money as a result of the Defendants' use or employment of the methods, acts, or practices.

108. As a direct and proximate result of the Defendants' acts of fraud, the Plaintiff suffered irreparable injuries.

109. The Decedent's injuries and damages are severe and permanent, will continue into the future, and were accompanies by circumstances of fraud, malice, and/or gross negligence. As a result, the Plaintiff seek actual and punitive damages from the Defendants.

## CLAIM FOR DAMAGES - COMPENSATORY AND PUNITIVE

110. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

111. The Decedent died as a direct and proximate result of the conduct and breaches of the Defendants, as aforesaid, for which compensation is required.  Specifically, the Defendants'

products caused Decedent to sustain fatal levels of blood sugar which led to DKA and her eventual death.  The Plaintiff is seeking monetary damages from the Defendants to compensate the Estate of Michele Andrea Kubas for damages arising from the wrongful death of Decedent, including all damages allowed pursuant to the Colorado Wrongful Death Statute and applicable law.

112. As a result of the aforementioned acts and/or omissions, the Defendants are liable for all elements of damages arising from the Decedent's wrongful death, including:

(a)     Damages for the loss of love, companionship, society, advice and care of Decedent, which the wrongful death beneficiaries have suffered and will suffer in the future because of the untimely, wrongful death of the Decedent;

(b)     Damages for the value of the life of Decedent, which was wrongfully taken by the wrongful conduct of the Defendants;

(c)     Damages for the loss of support and maintenance;

(d)     Damages for loss of wages and wage earning capacity;

(e)     Damages for disfigurement, impairment and disability;

(f)     Damages for past doctor, hospital, drug, and medical bills;

(g)     Damages for past mental anguish and emotional distress;

(h)     Damages for physical pain and suffering;

(i)     Damages for loss of enjoyment of life;

(j)     Damages for funeral expenses;

(k)     Damages for all other losses, both economic and intrinsic, tangible and intangible, arising from the death of Decedent, all of which were proximately caused by the acts and/or omissions of the Defendants; and

(l)     Any other relief which the Court or jury deems just or appropriate based upon the circumstances.

113. Plaintiff is entitled to punitive damages, and reserves the right to move the Court for leave to assert a claim therefore after initial disclosures have been completed, because Defendants' actions were caused by Defendants' fraud, malice, gross negligence reckless, and/or without regard for the public's safety.  Defendants misled both the medical community and the public at large, including Decedent and Decedent's physicians, by making knowingly and false representation about and concealing pertinent information regarding Medtronic MiniMed Infusion Sets.  Defendants downplayed, understated and disregarded its knowledge of the serous and permanent health risks associated with the use of Medtronic MiniMed Infusion Sets despite information demonstrating the product was unreasonably dangerous.

114. Defendants failed to provide warnings that would have dissuaded health care professionals from using Medtronic MiniMed Infusion Sets, thus preventing health care professionals and consumers, including Decedent, from weighing the true risks against the benefits of using Medtronic MiniMed Infusion Sets.

115. Defendants failed to provide adequate training and instructions to physicians to prevent Medtronic MiniMed Infusion Sets from causing serious harm and suffering to patients, including Decedent.

116. As a proximate result of Defendants' acts and omissions, Decedent died as a result of using Medtronic MiniMed Infusion Sets.

117. As a result of Decedent's injuries, the Plaintiff have endured substantial pain and suffering, have incurred significant expenses for burial etc., and will remain economically challenged and emotionally harmed.

118. Plaintiffs have suffered and will continue to suffer economic loss and have otherwise been emotionally and economically harmed.

119. Defendants' actions were performed fraudulently, with malice and/or gross negligence, willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

120. As a direct and proximate result of Defendants' conduct and omissions described herein, Decedent's life was dramatically shortened, robbing Decedent's family of affection and service.  Decedent's death was a direct and proximate result of the products and wrongdoing of the Defendants, as set out herein.

121. Plaintiffs' injuries and damages are severe, permanent and will continue into the future.  As a result, Plaintiffs seek all actual, economic, noneconomic, exemplary, and punitive damages from the Defendants as permitted by law.

122. Defendants' conduct was committed by knowing, conscious and deliberate disregard for the rights and safety of consumers, including the Decedent, thereby entitling the Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## **PRAYER FOR RELEIF**

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendants as follows:

A.  Awarding Plaintiffs' past and future loss of earnings and/or earning capacity, according to proof;

B.  Awarding Plaintiffs' past and future general damages, according to proof;

C.  For compensatory damages according to proof, including pain, suffering and mental anguish;

D.   Awarding punitive and exemplary damages in an amount to be determined at trial subject to amendment of the Complaint at the Court's discretion;

E.   Awarding all economic and noneconomic, treble damages pursuant to statute, and exemplary damages in an amount to be proven at trial;

F.   Awarding disbursements and expenses of this action, including reasonable attorney fees and costs pursuant to law or statute, and other appropriate relief;

G.   Awarding prejudgment and post judgment interest; and

H.   Granting such other relief as is just and proper, including restitution, equity or statutory provisions as the Court deems proper to prevent unjust enrichment of the Defendants and to provide the Plaintiffs with an effective remedy for the damages caused and injuries suffered as a result of the Defendants' wrongdoing as previously referenced.

**PLAINTIFFS REQUEST A JURY TRIAL ON ALL CLAIMS SO TRIABLE**

Date: August 14, 2019.                                Respectfully Submitted,

NEMKOV │BRUNGER
BONIFAZI │MCLEOD, PLLC

*/s/ Dan Bonifazi*
Dan Bonifazi, #30645
Scott D. McLeod, #38564
1873 S. Bellaire Street, Ste. 1401
Denver, CO 80222
Phone No. 720-208-0111
dan@nbbmlaw.com
smcleod@nbbmlaw.com
*Attorneys for Plaintiff*